J-A27035-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| KAREN COWHER, ADMINISTRATRIX OF THE ESTATE OF  JAMES L. COWHER, II, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| SOBHAN KODALI, M.D., ST. LUKE'S UNIVERSITY HEALTH NETWORK AND ST. LUKE'S CARDIOLOGY ASSOCIATES | : | No. 1111 EDA 2020 |
| Appellants | : | |

Appeal from the Judgment Entered April 7, 2020
In the Court of Common Pleas of Lehigh County Civil Division at No(s):
No. 2018-C-0264

BEFORE:   STABILE, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED JANUARY 31, 2023**

This matter is an appeal by Appellants Sobhan Kodali, M.D., St. Luke's University Health Network and St. Luke's Cardiology Associates (collectively, Defendants) from a judgment entered on a jury verdict in favor of the plaintiff, Karen Cowher, Administratrix of the Estate of James L. Cowher, II, Deceased (Plaintiff) in a wrongful death and survival medical malpractice action.  This case returns to us after our Supreme Court reversed this Court's original order of February 8, 2021 vacating the damages judgment on Plaintiff's survival claim and remanded the case to this Court for consideration of two issues

_____

[*] Retired Senior Judge assigned to the Superior Court.

raised by Defendants that we did not reach in our February 8, 2021 decision. *Cowher v. Kodali*, 283 A.3d 794, 810 (Pa. 2022). For the reasons set forth below, Defendants are barred under the Supreme Court's decision in this case from seeking relief on both of these remaining issues and we therefore affirm the judgment of the trial court.

This action arose out of the death of James L. Cowher, II (Decedent) from cardiac arrest at the age of 48. As set forth in our February 8, 2021 decision, the events surrounding Decedent's medical care and death are as follows:

> In September 2015, Decedent had an episode of chest pain and underwent a stress echocardiogram test that was normal. On July 11, 2016, Decedent saw his primary care physician for episodes of chest pain that were becoming more frequent and severe and that radiated from the chest to his arms and were accompanied by some shortness of breath, nausea, and sweating. Decedent's primary care physician performed an electrocardiogram and had a test done for troponin, a chemical marker of heart damage, both of which were normal.

> Decedent's primary care physician arranged for Decedent to be seen by an affiliated cardiology group, and defendant Dr. Sobhan Kodali, a cardiologist in that group, saw Decedent on July 13, 2016. Decedent reported to Dr. Kodali that for the last six months he had been experiencing chest pain that radiated to both arms, often with shortness of breath, dizziness, and tingling in his fingers. Decedent also reported to Dr. Kodali that he was regularly running for exercise without symptoms. Dr. Kodali was aware that Decedent had a family history of premature coronary artery disease, had high cholesterol, and was overweight. Dr. Kodali did not order or perform any tests other than an additional electrocardiogram, which was normal, and a lipid test, and concluded that Decedent's chest pain was "not cardiac," stating that "[n]o further evaluation is necessary at this time" and that "[o]verall the clinical picture is suggestive of anxiety/panic attacks."

On August 23, 2016, Decedent suffered cardiac arrest while jogging and died. The pathologist who performed an autopsy on Decedent found that Decedent had blockages of 80% and over 90% in the left main and left anterior descending coronary arteries and listed the cause of Decedent's death as "[f]avor cardiac arrhythmia secondary to ASCVD [arteriosclerotic cardiovascular disease]." The coroner reported the cause of Decedent's death as acute myocardial infarction due to severe coronary artery disease.

*Cowher v. Kodali*, No. 1111 EDA 2020, slip op. at 2-4 (Pa. Super. filed February 8, 2021) (citations omitted) (brackets in original).

On January 31, 2018, Plaintiff, Decedent's widow, brought this medical malpractice wrongful death and survival action against Defendants. In her complaint, Plaintiff averred that Dr. Kodali was negligent in failing to diagnose Decedent as having unstable angina and severe coronary artery disease, that Dr. Kodali's failure to diagnose and treat him for those conditions caused Decedent's death, and that St. Luke's Cardiology Associates (Associates), Dr. Kodali's practice group, and St. Luke's University Health Network (Health Network), the health network that owns Associates, were liable for Dr. Kodali's negligence. Amended Complaint ¶¶8-12, 15-28, 31, 34. Plaintiff's cardiology expert opined in his report that Dr. Kodali was negligent in failing to diagnose Decedent as suffering from unstable angina and in failing to recommend diagnostic testing, including cardiac catheterization, that would have shown Decedent's severe coronary artery disease, which could have been successfully treated by coronary bypass surgery, and that these deviations from the standard of care caused Decedent's death. Hayek 3/28/18 Report at 5-9. Plaintiff's cardiology expert also opined in that report that Decedent

died from cardiac arrhythmia caused by severe left main and left anterior descending coronary artery disease and briefly stated that Decedent experienced conscious pain and suffering before his death. *Id.* at 8-9. Defendants filed motions *in limine* to preclude Plaintiff's cardiology expert from testifying that Decedent died of a cause other than acute myocardial infarction and to preclude him from testifying that Decedent experienced conscious pain and suffering, and the trial court denied both of these motions prior to trial.

The case was tried to a jury from December 3, 2019 to December 9, 2019. Seven witnesses testified at trial: a neighbor who was present when Decedent's fatal event occurred, Plaintiff's cardiology expert, Plaintiff's economic expert, Plaintiff, Defendants' cardiology expert, Dr. Kodali, and Decedent's primary care physician.

The neighbor testified that she saw Decedent walking slowly, kneeling, and laying down, that Decedent said "I need help," and that Decedent appeared to be "in pain" and "not himself" and "was very distraught." N.T. Trial, 12/3/19, at 73-77. The neighbor also testified that Decedent was conscious for approximately three minutes before he passed out. *Id.* at 77-78.

Plaintiff's cardiology expert testified that Decedent was suffering from unstable angina and severe coronary artery blockages when he saw Dr. Kodali and that Decedent died from a cardiac arrhythmia caused by insufficient blood supply to the heart as a result of those coronary artery blockages. N.T. Trial,

12/3/19, at 152, 156-58, 166, 172-77, 186-89, 220. Plaintiff's cardiology expert opined that, given the chest pain symptoms that Decedent reported, Dr. Kodali breached the standard of care in failing to diagnose Decedent's unstable angina and in failing to order cardiac catheterization, which would have revealed the blockages and resulted in bypass surgery, and opined that Decedent's untreated coronary artery disease caused his death. *Id.* at 143, 162-64, 169-71, 177, 190-202, 211-13, 215-20. He also opined based solely on the neighbor's testimony, without offering any medical analysis or reasoning, that Decedent experienced conscious pain and suffering at the time of his fatal cardiac event. *Id.* at 221.

Plaintiff's economic expert opined that the economic loss from Decedent's death, including all earnings, fringe benefits and value of the loss of his household services, totaled $1,070,145 to $2,700,498, depending on assumptions concerning age of retirement, salary increases, and economic conditions. N.T. Trial, 12/4/19, at 48-60. Defendants stipulated that Associates and Health Network were vicariously liable for Dr. Kodali's conduct. *Id.* at 9-14.

On December 9, 2019, the jury returned a verdict in favor of Plaintiff and against Defendants awarding Plaintiff $2,457,000 in wrongful death damages and $3,833,000 in damages on the survival claim. Defendants timely filed post-trial motions seeking a new trial, or alternatively a new trial on damages or a remittitur, and Plaintiff moved to add delay damages to the

verdict. On April 7, 2020, the trial court denied Defendants' post-trial motions, granted Plaintiff's delay damages motion, and entered judgment in favor of Plaintiff and against Defendants in the amount of $6,631,642.70.

Defendants timely appealed and presented the following four issues for review:

1. Whether the trial court erred and abused its discretion in failing to vacate the verdict where Plaintiff failed to prove liability under her new, eleventh-hour cause of death theory by presenting expert testimony identifying a specific standard of care for treatment of cardiac arrythmia (as opposed to other coronary conditions), which Defendants breached and thus caused Plaintiff's harm?

2. Whether the trial court erred and/or abused its discretion in permitting Plaintiff's expert to testify to his assumptions regarding the purported pain and suffering decedent experienced?

3. Whether the trial court erred and abused its discretion in failing to vacate the Survival Act award where the record is devoid of evidence that decedent was conscious, able to feel pain or indeed felt pain immediately prior to death and, thus, any award for pain and suffering is against the weight of the evidence?

4. Whether the trial court erred and/or abused its discretion in denying Defendants' requests for a new trial on damages and/or remittitur, where the jury's Survival Act verdict award of $377,000 per minute (at best) for 2-3 minutes of pain and suffering is grossly excessive, unmoored from the record, and against the weight of the evidence?

Appellants' Brief at 5-6 (suggested answers omitted).

On February 8, 2021, this Court issued a decision in this appeal in which we rejected Defendant's Issue 1 claim that Plaintiff had failed to prove liability, but held on Issue 2 that the trial court had erred in admitting the opinion of Plaintiff's expert on pain and suffering, which merely placed an expert

imprimatur on lay witness testimony, and that this error could have affected the jury's survival damages award. No. 1111 EDA 2020, slip op. at 7-19. Accordingly, we affirmed the trial court's judgment as to liability and its damages judgment on Plaintiff's wrongful death claim, but vacated the damages judgment on Plaintiff's survival claim and remanded for a new trial on damages with respect to that claim. *Id.* at 19-20. Because Defendants' third and fourth issues involved only the survival damages award that had been vacated, we did not rule on those two issues. *Id.* at 20.

Plaintiff filed a petition for allowance of appeal in which she sought review of several issues, including whether this Court erred in holding the expert pain and suffering testimony inadmissible and whether Defendants' failure to request an itemized verdict slip waived their right to seek a new trial based on the admission of that testimony. On October 19, 2021, the Supreme Court granted Plaintiff's petition for allowance of appeal, limited to the following single issue:

> Where, as here, [Defendants] failed to request an itemized verdict slip such that the jury would have been required to separately value the amount of each element of damages under Pennsylvania's Survival Act and where the [Defendants] failed to object to the general verdict slip given by the Trial Court to the jury to answer during deliberations, knowing that they intended to challenge any pain and suffering award rendered by the jury, whether those same [Defendants] are estopped from requesting and receiving or have waived a new trial on damages?

*Cowher v. Kodali*, 265 A.3d 198 (Pa. 2021).

On September 29, 2022, the Supreme Court reversed our February 8, 2021 vacating of Plaintiff's survival damages judgment on the ground that Defendants, by failing to request a verdict slip that itemized the pain and suffering damages that the jury awarded, waived their right to seek a new trial based on an error that could only have affected the amount of an award for pain and suffering. *Cowher v. Kodali*, 283 A.3d at 804-10. The Court held that, under the general verdict rule, "when a litigant fails to request a special verdict slip that would have clarified the basis for a general verdict, and the verdict rests upon valid grounds, 'the right to a new trial is waived.'" *Id.* at 804 (quoting *Shiflett v. Lehigh Valley Health Network, Inc.*, 217 A.3d 225 (Pa. 2019)). The Court held that the requirements of that rule were satisfied because the jury's survival award was supportable solely on the basis of other elements of survival damages that were unaffected by the expert testimony and it was not possible to determine from the general verdict what amount of pain and suffering damages the jury awarded or even whether the jury had awarded any pain and suffering damages. 283 A.3d at 805-07, 809. The Court ruled that it was appropriate to hold that Defendants waived their right to seek a new trial because Defendants were aware before trial that the admission of evidence on pain and suffering damages was a potential appellate issue, but never requested a special interrogatory itemizing pain and suffering damages and instead sought a verdict slip with one blank for the jury to award a single lump sum amount of survival damages. *Id.* at 805-06.

Because this Court had not addressed two of Defendants' issues and the reversal of our vacating of the survival claim judgment made it necessary to reach those issues, the Supreme Court remanded the case to this Court to address those issues, specifically directing that "[i]n addressing the remaining issues, the Superior Court shall consider whether these claims are also waived by defendants' failure to request a special verdict slip itemizing the amount of pain and suffering damages." 283 A.3d at 810 & n.7. Following remand, this Court directed the parties to file supplemental briefs addressing this waiver issue and the parties have complied with that order.

Applying our Supreme Court's decision to the two remaining issues, we conclude that they are barred by Defendants' failure to request a special verdict slip itemizing the amount of pain and suffering damages. Both Issue 3 and Issue 4 are entirely dependent on a determination that the jury's survival award included an award for pain and suffering. Appellants seek in Issue 3 to vacate the survival claim award on the ground that "any award for pain and suffering is against the weight of the evidence" and seek in Issue 4 a new trial on survival damages or remittitur of the jury's survival claim award on the ground that an "award of $377,000 per minute (at best) for 2-3 minutes of pain and suffering" is excessive. Appellants' Brief at 5-6. The Supreme Court, however, ruled that it cannot be determined from the lump sum general survival claim verdict what amount of pain and suffering damages the jury

awarded or even whether the survival claim award includes any pain and suffering damages at all.  283 A.3d at 805-07, 809.

Defendants argue in their supplemental briefs that these issues are not waived because they are allegedly challenges to whether the entire survival damages award of $3,833,000 as a whole is against the weight of the evidence or excessive and that a determination of the amount of the pain and suffering award is not essential to issues concerning the survival claim award as a whole.  This argument fails for two reasons.  First, it misstates the issues that Defendants raised in this appeal.  Contrary to Defendants' new redrafting of these issues, Issues 3 and 4 expressly challenged the survival damages award on the ground that it included pain and suffering damages and that the amount of pain and suffering damages that the jury awarded was excessive, not on the ground that the survival claim verdict as a whole was unsupported or excessive.  Appellants' Brief at 5-6.

Second, and most fundamentally, the contention that the total amount of the survival claim award is against the weight of the evidence or excessive was expressly rejected by the Supreme Court.  The Supreme Court, in determining whether the general verdict rule applied, concluded that the verdict as a whole was supported by the evidence and not excessive, even if it contained no pain and suffering damages, because there was sufficient evidence to support the amount of survival damages award based on evidence of the other components of survival damages.  283 A.3d at 805-07. The Court

specifically ruled that "the general survival damages verdict returned by the jury is supportable solely on the basis of the proper evidence of loss of life's pleasures and/or lost earnings." *Id.* at 806. Defendants' contention that we should disregard our Supreme Court's ruling as "*dicta*," Appellants' Supplemental Brief at 14, is without merit. The ruling that the verdict as a whole was valid even if it included no pain and suffering award was necessary to the Court's determination that the general verdict rule applied and barred Defendants from obtaining a new trial, as the general verdict rule requires a determination that the general verdict could be based on another, valid ground. 283 A.3d at 804.

The Supreme Court also based its waiver holding on the fact that Defendants knew before the case was submitted to the jury that there was a potential appellate issue concerning pain and suffering damages and chose not to seek a verdict slip that would separate such damages from the other survival damages that Plaintiff sought. 283 A.3d at 805-06. That fact is equally present with respect with respect to Issues 3 and 4, which assert that there was no basis on which the jury could validly award any pain and suffering damages and challenge the alleged amount of pain and suffering damages allegedly awarded as excessive. Defendants were plainly aware before trial that there was a potential appellate issue concerning whether pain and suffering damages could be awarded, as they sought to exclude all evidence of pain and suffering in the same motion in *limine* in which they sought to

exclude Plaintiff's expert's testimony on pain and suffering. Motion *in Limine* to Preclude Pain and Suffering Evidence at 5 and Supporting Memorandum of Law at 2-3, 8; N.T. Motions *in Limine* Hearing at 58-60, 69-75. Defendants therefore knew that any award of pain and suffering damages and the amount of any such award would be a potential subject for appeal, yet chose not to seek a separate verdict on such damages that would have made it possible to determine whether the verdict included pain and suffering damages and the amount of such damages.

Because the bases on which our Supreme Court found that Defendants were barred by waiver from setting aside the jury's survival claim verdict based on erroneous admission of expert testimony on pain and suffering are equally applicable to their Issue 3 and 4 attempts to set aside that verdict based on the contention that it included pain and suffering damages and that the pain and suffering damages award was excessive, those claims are also necessarily barred by waiver.[1] Accordingly, we affirm the trial court's judgment in its entirety.

Judgment affirmed.

_____

[1] In addition, to the extent that Defendants' Issue 3 is dependent on the claim that there was no evidence that Decedent could have experienced conscious pain and suffering at the time of the fatal event without the excluded expert testimony, it is not only waived, but is also without merit. As we held in our prior decision, No. 1111 EDA 2020, slip op. at 16-17 n.3, the neighbor's fact testimony was sufficient to show that Decedent was conscious and capable of feeling pain and distress for a brief period during his fatal cardiac event.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/31/2023